IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

RODERICK D. HAYNES,            )
                              )
        Plaintiff,             )
                              )
    v.                         )        CV 114-237
                              )
DEPUTY MICHAEL GARNER,         )
                              )
        Defendant.             )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

*Pro se* Plaintiff alleges Defendant, Richmond County Sheriff's Deputy Michael Garner,

used excessive force during an arrest on May 12, 2013 by intentionally ramming Plaintiff with a

police cruiser. Because the undisputed facts show Deputy Garner is entitled to qualified

immunity, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary

judgment be **GRANTED** (doc. no. 82), final judgment be **ENTERED** in favor of Defendant,

and this civil action be **CLOSED**.[1]

## I.    FACTS

The general outline of events occurring on May 12, 2013 is undisputed. Plaintiff

---

[1]The Court will not consider Deputy Garner's reply brief (doc no. 100), filed long after
the deadline of March 21, 2017. See Loc. R. 7.6 ("A party intending to file a reply brief shall
immediately so notify the Clerk and shall serve and file the reply within fourteen (14) calendar
days of service of the opposing party's last brief."); Glickman v. Sears, Roebuck & Co., 129 F.
App'x 526, 529 n.1 (11th Cir. 2005) (holding district court did not abuse discretion in striking
untimely reply brief).

attended a Mother's Day cookout at the Providence Place Apartment Complex near 2401 Bahama Drive in Augusta, Georgia. An altercation involving Plaintiff occurred during the cookout. Deputy Garner, who was nearby speaking with a resident at 2406 Bahama Drive, heard noise from the altercation and arrived in his patrol car to investigate. Plaintiff fled the scene in his brother's car and eventually abandoned the vehicle, continuing his flight on foot. Deputy Garner pursued Plaintiff in his patrol car and, when he spotted Plaintiff fleeing on foot in the church parking lot, Deputy Garner drove the patrol car toward Plaintiff. The patrol car collided with Plaintiff, Deputy Garner placed Plaintiff under arrest, and Plaintiff was transported to a hospital for examination and treatment.

### A.     Plaintiff's Version of the Facts

Plaintiff provided his version of the detailed facts by way of a declaration dated February 23, 2017. A group of people assaulted Plaintiff at the cookout, and one of the assailants had a gun. (Doc. no. 98, p. 1 (hereinafter "Haynes Decl.").) Plaintiff does not identify the assailants, explain why they assaulted him, or describe by what means or what manner the assault occurred. (Id.) To avoid being shot by the armed assailant, Plaintiff fled the scene in his brother's car and hit a curve at some unspecified time and location. (Id. at 1-2.)

Seemingly because the car was disabled by the collision with the curve, Plaintiff exited the vehicle and "fled on foot to seek help." (Id. at 2.) As he was "fleeing on foot," he claims Deputy Garner "intentionally, knowingly, and deliberately with all malice . . . hit me, knocking me up in the air (over 6ft) . . . ." (Id.) Plaintiff estimates Deputy Garner was

driving at a speed of 55 to 60 mph at the time of the collision, and he further claims Deputy Garner gave no formal warning by siren or speaker prior to the collision. (Id.)

Plaintiff also submitted declarations from Mae Haynes and Cassandra Harris, both of whom declare that, on May 19, 2014, Deputy Garner testified in Richmond County Superior Court he was driving the patrol car at a speed of 55 mph at the time of the collision with Plaintiff.[2] (Doc. nos. 102, 103.)

The collision allegedly "cause[d] extensive damage to the windshield" of the patrol car and "resulted in bodily injuries to [Plaintiff's] neck, shoulder, back and leg." (Haynes Decl., p. 2.) Plaintiff claims mental pain and suffering and physical injuries to the extent he is "not able to carry on normal daily activities . . . ." (Id. at 3-4.)

### B.     Deputy Garner's Version of the Facts

By affidavit dated September 1, 2016, Deputy Garner provided the following description of the events. Deputy Garner was speaking with a resident at 2406 Bahama Drive when he heard a "loud disturbance behind 2401 Bahama Drive." (Doc. no. 82-1, ¶¶ 5-6 (hereinafter "Garner Aff.").) Deputy Garner drove to the back of the building and exited his patrol car, where he found "several subjects yelling" and "several bystanders indicate[d] that [Plaintiff] was in possession of a firearm." (Id. ¶ 7.) Plaintiff "ran to and entered a gold Mercury Grand Marquis, which was pointed in [Deputy Garner's] direction at the time." (Id.) Deputy Garner claims he "yelled and motioned for Haynes to stop." (Id. ¶ 8.) Despite the fact Deputy Garner was "in full and clear view" of Plaintiff while standing next to his

_____

[2]Their testimony is excluded from the hearsay rule as the statement of a party opponent. See Fed. R. Evid. 801(d)(2).

patrol car and wearing his uniform, Deputy Garner alleges Plaintiff "accelerated his vehicle, coming within only a few feet of [Deputy Garner's] person." (Id. ¶¶ 8-9.)

Because of the tip Plaintiff was armed and the manner in which Plaintiff fled the scene, Deputy Garner jumped into his patrol car to pursue Plaintiff. (Id. ¶¶ 10-11.) Because he was simultaneously driving and using his portable radio to contact dispatch, Deputy Garner did not engage his siren, lights, or any other external warning. (Id. ¶ 11.)

Deputy Garner pursued Plaintiff for approximately two minutes. (Id.) As Plaintiff attempted to drive out of the apartment complex, he was blocked by a stopped vehicle. (Id. ¶ 12.) Plaintiff exited the car and ran down Richmond Hill Road into the parking lot of Calvary Baptist Church. (Id. ¶¶ 12-14.) As Plaintiff was running across the parking lot, Deputy Garner's patrol car collided with Plaintiff. (Id. ¶¶ 13-14.) Deputy Garner described the events surrounding the moment of impact as follows:

13. I drove around the stopped vehicle and, after observing [Plaintiff] running across the parking lot of Calvary Baptist Church and towards the woods, I attempted to cut him off by pulling in front of him with the patrol car.

14. [Plaintiff] continued to run, and was in fact running towards my vehicle, when he attempted to jump across the hood of my vehicle, forcing me to adjust my course and heading to avoid running over him. [Plaintiff] struck the windshield of my vehicle, and my vehicle ended up in a small ditch behind Calvary Baptist Church.

15. I then checked to see if [Plaintiff] had been injured, took him into custody, and requested EMS assistance. I also requested additional assistance from the RCSO. While taking [Plaintiff] into custody, I detected a strong odor indicative of an alcoholic beverage.

(Id. ¶¶ 13-15.)

Deputy Garner testified by affidavit that "[a]t no time during the course of the

aforesaid events did I intend to strike Haynes with my vehicle or to otherwise injure him in any manner." (Id. ¶ 17.) Instead, Deputy Garner alleges he pursued Plaintiff to question him about the altercation at 2401 Bahama Drive and to ensure Plaintiff did not pose a risk to any other persons. (Id. ¶ 18.)

After the collision, Deputy Garner immediately called for EMS assistance, and Plaintiff was transported by ambulance to the emergency department ("ED") at Georgia Regents Medical Center ("GRMC"). (Id. ¶ 15.) As a result of this incident, Plaintiff was charged with Aggravated Assault, Obstruction of an Officer, Possession of Marijuana, Fleeing and Attempting to Elude, and DUI. (Id. ¶ 16.) Although officers did not conduct a blood alcohol test, Deputy Garner detected a strong odor of alcohol when interacting with Plaintiff and the treating medical professionals at GRMC repeatedly noted an elevated blood alcohol level and acute intoxication during the course of their treatment. (Id. ¶ 15; Haynes Decl. pp. 11, 13, 15, 18, 56.)

### C. Affidavit of Lt. Allan Rollins

In support of his summary judgment motion, Deputy Garner submitted the affidavit of Lieutenant Allan Rollins, Commander of Internal Affairs for the Richmond County Sheriff's Department. (See doc. no. 82-2.) Lt. Rollins "supervise[s] the receipt, processing, and investigation of complaints concerning RCSO employee conduct." (Id. ¶ 3.) The majority of Lt. Rollins' affidavit describes the events of May 12, 2013, which the Court will not consider because Lt. Rollins has no personal knowledge of these facts. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); <u>Parrott v. PNC Bank, Nat. Ass'n</u>, 986 F. Supp. 2d 1263, 1271 (N.D. Ala. 2013) ("For a matter to be considered within a witness's personal knowledge, it must be derived from the exercise of his own senses, not from the reports of others—in other words, [it] must be founded on personal observation.") (internal quotations omitted).

Lt. Rollins also offers his opinion, based upon a "review of the record," that Deputy Garner "acted reasonably and appropriately" and with no intent to injure when he pursued and arrested Plaintiff. (<u>Id.</u> ¶¶ 13-14.) The Court will not consider this opinion because Lt. Rollins has not been identified as an expert nor is he qualified to give a lay opinion. Because Deputy Garner did not identify Lt. Rollins as an expert in its initial disclosures, Lt. Rollins may not give an expert opinion under Fed. R. Evid. 702. <u>See</u> Fed. R. Civ. P. 26(a)(2) ("a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705"). Furthermore, in order for Lt. Rollins to provide an admissible lay opinion, it must be "rationally based on [his] perception." Fed. R. Evid. 702(a). "This limitation on lay opinion testimony is 'the familiar requirement of first-hand knowledge or observation.'" <u>United States v. Barnes</u>, 481 F. App'x 505, 512 (11th Cir. 2012) (quoting Advisory Committee's note to Rule 701). Lt. Rollins did not observe or have firsthand knowledge of the incident, but merely reviewed documents recounting the incident. Consequently, he cannot opine as a lay witness on the reasonableness of Deputy Garner's actions.

Indeed, the only helpful tidbit gleaned from Lt. Rollins' affidavit is his explanation that, "[p]er RCSO policy, the decision to pursue rests solely with the investigating deputy, and deputies have the authority to attempt to stop any person suspected of having committed a criminal offense." (Id. ¶ 12.)

**D.    Medical Records**

According to medical records submitted by Plaintiff, the trauma unit at GRMC diagnosed him with a concussion, laceration of his lip, and abrasion of the upper arm. (Haynes Decl., p. 11.)   Plaintiff's pain and bleeding was minimal, and he showed no cervical/thoracic/lumbar spine tenderness or deformities and no chest wall tenderness, injury, or crepitus.  (Id. at 10, 13.)   The GRMC records note the speed of impact to be 20 mph, although the source of this estimate is unknown.  (Id. at 6.)

A chest x-ray showed no acute fractures or pneumothorax, and "[t]he soft tissues and visualized portions of the abdomen [were] normal." (Id. at 20.)   The radiologist found "no acute traumatic cardiopulmonary." (Id.)   The CT scan showed similarly normal results, and the radiologist concluded "[n]o CT evidence of acute traumatic injury to the abdomen or pelvis." (Id. at 22.)   The trauma team cleared Plaintiff for discharge after examination and the scans. (Id. at 15.)

More than one year after the collision and nearly six months after he filed this lawsuit, Plaintiff first sought medical treatment from the Georgia Department of Corrections, complaining of severe nerve pain in his neck, shoulder, back, and right leg from the incident. (Haynes Decl., pp. 24-30.)   Plaintiff gives no reason for not seeking medical treatment

earlier.

**E.    Scope of Undisputed Facts**

Although Plaintiff disputes the Deputy Garner's speed and intention during the collision, Plaintiff does not dispute Deputy Garner's version of many other facts, including that Deputy Garner was in full uniform, in a clearly marked patrol car, and that others at the cookout informed Deputy Garner that Plaintiff had a gun.  (Garner Aff. ¶¶ 9-10.)  Therefore, all of Deputy Garner's fact statements not directly opposed by Plaintiff and supported by the evidentiary record are deemed admitted.  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000).

## II.    DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no

reasonable jury could find for the nonmoving party." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial.  <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  <u>Id.</u> at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (quoting <u>Adickes</u>, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u> at 248.

**B.** **Deputy Garner Is Entitled to Qualified Immunity Because The Force He Used Was Reasonable and Did Not Violate the Fourth Amendment, and Any Fourth Amendment Right Violated By Deputy Garner Was Not Clearly Established.**

Deputy Garner is entitled to summary judgment because he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). For an official's acts to be within his or her discretionary authority, they must be "(1) undertaken pursuant to the performance of [his or her] duties and (2) within the scope of [his or her] authority." Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). If the defendant was acting within his or her discretionary authority, "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

Here, the Court concludes as a matter of law that Deputy Garner was acting within the scope of his discretionary authority because it is undisputed Deputy Garner was on duty and acting with the scope of his authority when he investigated the group altercation at the cookout and pursued Plaintiff as he fled from the scene. See Lenz, 51 F.3d at 1545. Accordingly, the

Court must determine whether Deputy Garner violated a constitutional right and, if so, whether that right was clearly established. Townsend, 601 F.3d at 1158.

### 1. Deputy Garner Did Not Violate Plaintiff's Fourth Amendment Rights.

Plaintiff contends Deputy Garner violated his Fourth Amendment rights by using excessive force during his arrest. (See doc. no. 97, pp. 8-15.) Deputy Garner argues the Fourth Amendment does not apply because he did not intentionally hit Plaintiff. (See doc. no. 82, pp. 3-6.) A Fourth Amendment seizure occurs where "there is a governmental termination of freedom of movement through means *intentionally* applied. . . ." Gaillard v. Commins, 562 F. App'x 870, 873 (11th Cir. 2014) (quoting Scott v. Harris, 550 U.S. 372, 381 (2007)) (emphasis in original). However, not every governmental termination of freedom of movement constitutes a seizure. The Supreme Court explained:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

Brower v. Cnty. of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in original).

Deputy Garner avers Plaintiff ran directly toward his vehicle and attempted to leap across the hood, and Plaintiff struck the windshield even though Deputy Garner attempted to alter course. (Garner Aff. ¶ 14.) Plaintiff avers Deputy Garner intentionally hit him with the patrol car at 55-60 miles per hours, causing him to fly more than six feet into the air. (Haynes Decl., p. 2.) Based on Plaintiff's averment, a reasonable juror could find Deputy

Garner intentionally hit Plaintiff with the patrol car and did so with the intent to injure. Because there is a genuine dispute of material fact regarding this pivotal issue, the Court cannot say as a matter of law that no Fourth Amendment seizure occurred.

Even when one assumes a Fourth Amendment seizure, however, Deputy Garner is still entitled to summary judgment because the force Deputy Garner used to affect the seizure was objectively reasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 395-97 (1989) (holding claim of excessive force in course of arrest or other seizure analyzed under Fourth Amendment "reasonableness standard"); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (same). "The 'reasonableness' inquiry [asks] whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kesinger, 381 F.3d at 1248. Whether an officer's use of force was excessive or reasonable "is a 'pure question of law,' decided by the court." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013)); see also Scott, 550 U.S. at 381 n.8.

This inquiry requires courts to "slosh [their] way through the factbound morass of 'reasonableness.'" Scott, 550 U.S. at 383. Consequently, a court must "look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009); see also Graham, 490 U.S. at 396 (use of force must be judged

"from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). Additionally, a court must take into account that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397. Generally, courts do not "second-guess the decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

In analyzing the objective reasonableness of force, a court must initially determine whether the officer needed to apply force at all by applying the three nonexclusive Graham factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Stephens, 852 F.3d at 1321 (quoting Graham, 490 U.S. at 396). If force was indeed necessary, a court must then apply the Eleventh Circuit's three factors for determining whether the use of force was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Id. at 1324 (internal quotations omitted). This "fact-specific inquiry takes into account facts as they reasonably appeared to the police officer." Williams v. Deal, 659 F. App'x 580, 597-98 (11th Cir. 2016), cert. denied, No. 16-937, 2017 WL 388097 (U.S. Mar. 20, 2017). Indeed, "[i]f an officer reasonably, but mistakenly, believes that one of the factors relevant to the merits of the constitutional excessive-force claim is present, the officer is justified in using more force than in fact was needed." Id.

To conduct this extensive analysis at summary judgment, one must first understand what the undisputed facts establish as the circumstances confronting the officer at the time of the decision to use force.  Here, it is undisputed that, when Deputy Garner arrived at the cookout to investigate, several bystanders yelled to him that Plaintiff was in possession of a firearm.  Also undisputed is that, when Plaintiff fled the cookout in the car, he accelerated while driving just a few feet away from Deputy Garner, who was standing by his patrol car in uniform while yelling and motioning at Plaintiff to stop.  Based on this information, Deputy Garner gave chase in his patrol car, and when Plaintiff abandoned his car and continued his flight on foot, Deputy Garner followed him into the parking lot and observed Plaintiff running toward a patch of woods when the collision occurred.

Viewing the circumstances from the perspective of a reasonable officer and applying the three Graham factors, Deputy Garner necessarily used force in apprehending Plaintiff.  As to the first factor, the severity of the crime at issue, Deputy Garner reasonably believed Plaintiff was involved in an altercation at the cookout, was armed, and fled the scene in direct violation of Deputy Garner's hand and verbal signals to stop.

Second, these same, undisputed facts establish that, from Deputy Garner's perspective, Plaintiff posed an immediate threat to his safety and that of other citizens in the area.  As the Eleventh Circuit has explained,

> The government has a weighty interest in protecting members of the public and police officers from the threat of force.  See [Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009).]  Thus, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," use of deadly force does not violate the Constitution.  Garner, 471 U.S. at 11 . . . (noting that this is the case even

14

where an officer uses deadly force merely to prevent the suspect's escape); see also Carr v. Tatangelo, 338 F.3d 1259, 1268 (11th Cir. 2003).  As this Court has clarified, the second factor can be reduced to a single question: "whether, given the circumstances, [the suspect] would have appeared to reasonable police officers to have been gravely dangerous."  Pace v. Capobianco, 283 F.3d 1275, 1281 (11th Cir. 2002).

Penley v. Eslinger, 605 F.3d 843, 851 (11th Cir. 2010).

Third, from Deputy Garner's perspective, Plaintiff was actively resisting arrest or attempting to evade arrest by flight.  This is true even if Plaintiff was, as he claims, trying to "escape from being shot," (Haynes Decl., p. 1), rather than evading arrest.  Regardless of his intent, Plaintiff's actions telegraphed to Deputy Garner that he was evading arrest.  Indeed, speeding away from an altercation in a car past a deputy who is signaling for you to stop, and abandoning a vehicle to run away from a clearly-marked patrol car in pursuit, give the unmistakable impression of flight to evade arrest rather than flight to avoid an assault.  See Williams, 659 F. App'x at 597-98.

Having determined the use of force was reasonably necessary, the Court must now analyze the amount of force used under the three Stephens factors, i.e. (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.  852 F.3d at 1324.  Applying these factors to the undisputed facts, the Court finds the amount of force was proportional to the need.

The Court finds Deputy Garner justifiably used the patrol car as a means of interrupting Plaintiff's flight to stop what he believed to be an armed and dangerous suspect from entering a woody area and evading capture.  While Plaintiff claims Deputy Garner struck him while traveling 55 to 60 mph, it is undisputed that Deputy Garner maneuvered the

vehicle in such a manner that the collision did not injure Plaintiff seriously. On the contrary, Plaintiff suffered only minor injuries of a concussion and a few abrasions, as the medical records he provides attest. (See Haynes Decl., pp. 6-23.) Such slight injuries are indicative of moderate, non-deadly force that was justified in the circumstances. See Roberts v. Midfield Police Dep't, No. 2:12-CV-04114-RDP, 2014 WL 6903150, at *6 (N.D. Ala. Dec. 8, 2014) (being knocked unconscious, sustaining "busted eye lube," broken finger, and injuries to knees and chest were characteristic of non-deadly force).

While Plaintiff has complained more recently of severe pain in his neck, shoulder, back, and right leg, there is no specific injury causing the pain and no evidence of a causal connection to the incident aside from Plaintiff's lay opinion the pain must be related. (See Haynes Decl., pp. 6-23.) Just as importantly, the outcome would be the same even if the incident cause the continuing, severe pain Plaintiff alleges. This is because, from Deputy Garner's perspective, deadly force causing severe injury was objectively reasonable and necessary to stop a fleeing, armed suspect from escaping an altercation by running into the woods. See Penley, 605 F.3d at 851.

For these reasons, all three factors weigh heavily in favor of Deputy Garner's use of force as "objectively reasonable" under the circumstances. Indeed, in Scott v. Harris, the Supreme Court reached the same result. In Scott, the defendant employed a "Precision Intervention Technique" in an attempt to stop the fleeing plaintiff during a high-speed chase lasting six minutes and nearly ten miles. Scott, 550 U.S. at 375. When the defendant struck the plaintiff's rear bumper, the plaintiff lost control of his vehicle and crashed, causing

serious injuries that rendered him a quadriplegic.  Id.  The Court held the defendant's application of force was reasonable given the factual circumstances.  Id. at 383-86.  In reaching this holding, the Court reasoned:

> [I]n judging whether [Defendant]'s actions were reasonable, we must consider the risk of bodily harm that [Defendant]'s actions posed to [Plaintiff] in light of the threat to the public that [Defendant] was trying to eliminate.  Although there is no obvious way to quantify the risks on either side, [Plaintiff] posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase.  It is equally clear that [Defendant]'s actions posed a high likelihood of serious injury or death to [Plaintiff]—though not the near *certainty* of death posed by, say, shooting a fleeing felon in the back of the head or pulling alongside a fleeing motorist's car and shooting the motorist.

Id. at 383-84 (internal citations omitted) (emphasis in original).  Other courts in this circuit applying Scott have also reached similar results.  See Beshers v. Harrison, 495 F.3d 1260, 1268 (11th Cir. 2007) (holding officer's use of force reasonable even if officer intentionally "clipped" plaintiff's vehicle causing plaintiff's death where plaintiff was fleeing law enforcement, driving recklessly, and suspected of DUI); Willis v. Mock, 600 F. App'x 679, 685 (11th Cir. 2015) (holding roadblock used to stop fleeing suspect was reasonable even if it constituted deadly force); Roberts, 2014 WL 6903150, at *8 (holding officer's use of force reasonable where he intentionally hit suspected armed plaintiff with police cruiser).

In sum, even if Deputy Garner seized Plaintiff under the Fourth Amendment, that seizure was objectively reasonable under the circumstances and Deputy Garner did not violate Plaintiff's Fourth Amendment rights.

**2.** **Even If Deputy Garner Violated Plaintiff's Fourth Amendment Rights, Those Rights Were Not Clearly Established.**

Even if Deputy Garner did violate Plaintiff's Fourth Amendment rights, Deputy Garner is entitled to qualified immunity because those rights were not clearly established at the time of the alleged violation. "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

The determination of "whether a constitutional right was clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Vinyard v. Wilson, 311 F.3d 1340, 1349-50 (11th Cir. 2002) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Factually similar cases from the relevant jurisdictions may be material to this determination, though prior cases need not demonstrate the unlawfulness of the challenged conduct in the exact same factual circumstance for qualified immunity to be overcome. See Hope v. Pelzer, 536 U.S. 730, 739 (2002). Rather, the issue here is whether the state of the law as of May 2013 gave Deputy Garner fair warning that intentionally hitting Plaintiff with his vehicle to stop his escape was unconstitutional. See id. at 741. Such warning may be found in light of materially similar prior case law or where the conduct at issue "was so obviously at the

core of what the Fourth Amendment prohibits" that any reasonable officer would know it was unlawful.  Vinyard, 311 F.3d at 1355 (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)).

First, Plaintiff has not shown, and the Court is not aware of, any case in the United States Supreme Court, Eleventh Circuit Court of Appeals, or Supreme Court of Georgia in which a court has determined Deputy Garner's conduct to be unconstitutional in these particular factual circumstances.  Plaintiff correctly notes that in Gaillard v. Commins, the Eleventh Circuit recently held a police officer who struck a suspect with his police vehicle was not entitled to summary judgment or qualified immunity.  See Gaillard v. Commins, 562 F. App'x 870, 873-877 (11th Cir. 2014); (Doc. no. 97, p. 10).  However, Gaillard is factually distinguishable.

In Gaillard, the Eleventh Circuit held a defendant was not entitled to summary judgment where "(1) [the defendant] applied deadly force when he struck [plaintiff] with his police vehicle in order to stop and arrest him and (2) [plaintiff] was *unarmed* and *did not pose a threat to a police officer or to a third party*."  Id. at 875 (emphasis added).  Here, in contrast, it is undisputed that Deputy Garner reasonably believed Plaintiff had a gun and was a threat to others. (See Garner Aff. ¶ 7.)  Under these circumstances, Gaillard is not sufficiently factually similar to constitute clearly established law.  See Roberts, 2014 WL 6903150, at *8 ("Gaillard does not constitute clearly established law where the suspect was armed with a weapon.")  Moreover, Gaillard was decided on April 7, 2014, nearly a year after the alleged incident occurred, and therefore could not have put Deputy Garner on notice that his conduct was unlawful as of May 2013.  See id.

Finally, in the absence of clearly established case law, the Court must ask whether Deputy Garner's conduct was so obviously at the very core of what the Fourth Amendment prohibits that any reasonable officer would know it was unlawful.  See Lee, 284 F.3d at 1199. The Eleventh Circuit has made clear that this is a "narrow exception."  See id.  Prior cases that meet this exception involve particularly egregious transgressions, including:

> a police officer who allegedly allowed his canine to attack for two minutes a prone and wholly compliant suspect who had stolen twenty dollars [sic] worth of snacks, a police officer who allegedly slammed a suspect's head against the trunk of his cruiser *after* the suspect had been arrested and fully secured, and a group of police officers who allegedly threw a secured suspect headfirst into the pavement before kicking him repeatedly.

Terrell v. Smith, 668 F.3d 1244, 1257-58 (11th Cir. 2012) (emphasis in original) (internal citations omitted).  Deputy Garner's conduct is far less egregious than the examples above, and therefore cannot be so obviously at the very core of what the Fourth Amendment prohibits that any reasonable officer would know it was unlawful.  See Lee, 284 F.3d at 1199; see also Roberts, 2014 WL 6903150, at *8 (holding even if officer intentionally hit armed plaintiff with police cruiser, it did not "obviously" violate Fourth Amendment for qualified immunity purposes).

Accordingly, because he is entitled to qualified immunity, Deputy Garner is entitled to summary judgment on Plaintiff's claims.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED** (doc. no. 82), final judgment be

**ENTERED** in favor of Defendant, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 31st day of July, 2017, at Augusta,

Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA